American Federation of State, County and Municipal Employees, AFL-CIO, Local 2572 and District Council 89, Appellants *v.* Borough of Schuylkill Haven, Appellee.

American Federation of State, County and Municipal Employees, AFL-CIO, Local 2572 and District Council 89, Appellants *v.* Borough of Schuylkill Haven, Appellee.

Argued November 12, 1985, before Judges ROGERS and BARRY, and Senior Judge BLATT, sitting as a panel of three.

*Alaine S. Williams,* with her, *Nancy J. McCauley, Kirschner, Walters, Willig, Weinberg & Dempsey,* for appellants.

*W. Alan Williams, Lewis, Williams and Caravan,* for appellee.

OPINION BY JUDGE ROGERS, January 31, 1986:

We have consolidated for argument and disposition the appeals of the American Federation of State, County and Municipal Employees, AFL-CIO, Council 89, Local 2572 (AFSCME), from two orders of the Court of Common Pleas of Schuylkill County vacating arbitrators' awards in grievance arbitration. Each of the awards directed the Borough of Schuylkill Haven (borough) to restore the previously existing workweek schedules of respectively, its sewage treatment plant and its water treatment plant employees, with reimbursement for loss of earnings, and to meet and discuss its proposed changes to the employees' workweek with the latters' bargaining representatives.

The appeal docketed to No. 3088 C.D. 1984 concerns the sewage treatment plant employees; No. 3085 C.D. 1984 concerns the water treatment plant employees.

The facts common to these appeals are as follows. AFSCME is the collective bargaining representative of the grieving employees. The collective bargaining agreement provides that disputes concerning the interpretation of the agreement shall be submitted to grievance arbitration and that such arbitration shall be final and binding.

Before the events of this case, and indeed sixteen years before the current collective bargaining agreement was entered into, the borough had established as the workweek of these employees, the days Monday through Friday, with overtime pay for employees required to work on Saturday and Sunday. For the express purpose of reducing its payroll expense, the borough established a seven-day workweek, pursuant to which, although all employees regularly worked only five days, some would be required, from time to time, to work on Saturday and Sunday at regular rates. Hence, overtime pay for Saturday and Sunday was eliminated.

The borough notified a steward of Local 2572 of the proposed change. We are not told what action, if any, the steward took; but no request was made to the borough that it meet and discuss the proposed change with the employees. *See* Section 702 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 363, *as amended,* 43 P.S. §1101.702.[1]

---

[1] Section 702 of PERA provides in pertinent part:

Public employers shall not be required to bargain over matters of inherent managerial policy, . . . Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon *upon request* by public employe representatives. (Emphasis supplied.)

Each of the two classes of employees, sewage plant and water plant, grieved the new workweek arrangement. Unfortunately, different arbitrators heard the cases. We are not provided with the questions which were submitted to the arbitrators. One of the arbitrators, however, stated the question as follows: ''Citing Article 1, Article 3, and Article 6, the union requested the following adjustment be made: 'allow sewage treatment plant employes to return to their previous weekly work schedule.' '' This seems a fair description of the cause.

The parties have submitted to us as the pertinent provisions of the collective bargaining agreement in effect when the grievances arose, the following:

ARTICLE VI—WORK WEEK

A. *Regular Time*

(1) The normal work week for all regular employees covered by this agreement shall consist of forty (40) hours. The standard work day shall be from 7:00 A.M. to 3:30 P.M. The Borough reserves the right to change the standard work day for unusual and/or extensive projects. Prior to any permanent change the Borough shall meet and discuss the changes with the Union.

(2) The work day shall consist of the eight (8) consecutive hours an employee is required to work per day as scheduled by the Borough Manager or Departmental Foreman, except that it may be interrupted by a lunch period.

(3) The pay week shall consist of the seven (7) day period beginning Monday at 12:01 A.M. and ending the following Sunday at midnight.

B. *Overtime*

Authorized time worked before or after his regularly scheduled duty shift, provided said extra time exceeds fifteen (15) minutes over the normal eight (8) hour shift, shall be considered

overtime. No employee shall be *required* to work in excess of eight (8) hours in overtime work, during any twenty-four (24) hour period. For purposes of calculating overtime, authorized sick leave as defined in Article 12, personal days, bereavement leave, and vacation time will be considered as time worked.

C. *Overtime Pay*

All overtime pay shall be paid at the rate of one and one-half (1½) times the regular hourly rate computed to the nearest half hour. (Emphasis in original.)

. . . .

ARTICLE XXX—
MISCELLANEOUS PROVISIONS

D. Employee benefits and working conditions now existing and not in conflict with the agreement shall remain in effect subject, however, to the right of the employer to change these benefits or working conditions in the exercise of its management rights.

There are two issues in each of these appeals. The first is that of whether the workweek practice in effect before the borough changed it was a proper subject for consideration by the arbitrators in interpreting the agreement; the second is that of whether notice of the borough's decision to change the existing workweek schedule given only to the steward of Local 2572 was sufficient to impose upon AFSCME, the employees' collective bargaining representatives, the obligation to request the borough to meet and discuss the proposed change before effecting it.

The arbitrator of the grievance of the sewage plant employees interpreted the collective bargaining agreement as incorporating the employer's past practice of a Monday through Friday workweek. He determined that the borough's notice given only to the steward of Local 2572 was insufficient to impose upon AFSCME,

which of course included District Council 89, the duty to request the borough to meet and discuss; and that as a consequence the employer had no right to place the new schedule into effect. He ordered the past practice be restored, with payment of losses of the employees' earnings, until compliance by the employer with its duty to meet and discuss.

The common pleas court concluded that the arbitrator of the sewage plant workers had been wrong on both issues and vacated the arbitrator's award.

The arbitrator who heard the water treatment plant employees' grievance found that it would be inappropriate "to bind the parties to the past practice" and concluded that because the agreement was silent on the matter of workweek, it was an existing working condition which the employer might change under Article XXX of the collective bargaining agreement. This arbitrator decided the meet and discuss issue exactly as had the arbitrator for the sewage plant employees and he made essentially the same order as that of the sewage plant employees' arbitrator, that is that the former workweek be restored with payment of losses to the employees until meet and discuss was requested.

The court of common pleas agreed with this arbitrator's interpretation of the agreement concerning the workweek. It disagreed with the arbitrator's decision that notice to the steward of the local was not sufficient; the court found that the notice to the steward was sufficient; and it vacated the award.

The scope of judicial review of awards of arbitrators of grievances under collective bargaining agreements providing for final and binding arbitration is narrow indeed; and it is well in approaching such review to be reminded of how narrow it is. We again quote from the cases:

The function of the court is very limited when the parties have agreed to submit all questions

of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim (footnotes omitted).

*United Steelworkers of America v. American Manufacturing Company,* 363 U.S. 564, 567-68 (1960).

It is the arbitrator's construction which was bargained for, and so far as the arbitrator's decision concerns the construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 599 (1960).

The essence test requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute. Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court.

. . . .

The fact that [the] arbitrator in analyzing this dispute may have failed to properly perceive the question presented or erroneously resolved it, does not provide justification for judicial in-

terference. Our inquiry ends once it is determined that the issue properly defined is within the terms of the agreement.

*Leechburg Area School District v. Dale*, 492 Pa. 515, 520-21, 424 A.2d 1309, 1312-13 (1981).

To state the matter more precisely, where a task of an arbitrator, PERA or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the Judiciary if the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention . . . Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969).

*Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 593-94, 375 A.2d 1267, 1275 (1977).

AFSCME contends that the common pleas court exceeded its power of review; that the decisions of both arbitrators on both issues before them drew their essence from the collective bargaining agreement, although, as we have seen, the two arbitrators interpreted the agreement quite differently as to the first of the two issues. AFSCME urges us to reverse the court's orders and to reinstate both awards.

**No. 3088 C.D. 1984—The Sewage Plant Employees**

In this proceeding the arbitrator interpreted the collective bargaining agreement as requiring the continuance of the past practice. He reached this conclusion by considering the practice itself and the fact that it had been in existence for a very long time.

The court of common pleas seems to have concluded that the silence of the agreement on the subject of workweek should have lead ineluctably to the application of Article XXX of the agreement giving the employer the right to change working conditions. AFSCME argues that it was proper for the arbitrator to consider past practice. The borough contends that while past practice may be considered in interpreting an unclear agreement it cannot be used to create new terms in an unambiguous contract. We believe that the arbitrator's decision should be upheld.

While in the case of *County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 381 A.2d 849 (1977), the Pennsylvania Supreme Court held that an unmentioned past practice could not be incorporated in an agreement containing a broad integration clause, it approved a commentator's description of the situations in which evidence of past practices might be used:

> (1) to clarify ambiguous language; (2) to implement contract language which sets forth only a general rule; (3) to modify or amend apparently unambiguous language which has arguably been waived by the parties; and (4) to create or prove a separate enforceable condition of employment which cannot be derived from the express language of the agreement.

This case presents an application of the fourth occasion for using past practice—to create or prove a separate enforceable condition of employment which could not be derived from the express language of the agreement. The arbitrator in this case noticed the practice, its longevity, and referred to testimony of witnesses which was "tantamount to a written agreement concerning the hours and working conditions which the employees could reasonably expect to receive for work rendered." The arbitrator held that the past practice was incorporated in the agreement. We have

concluded that the arbitrator's disposition of this issue drew its essence from the collective bargaining agreement.

On the second issue, this arbitrator, as had his colleague, decided that the subject of the change should be submitted to meeting and discussion between the parties. Unfortunately, this requirement is inconsistent with his holding on the first issue that the past practice was incorporated in the existing collective bargaining agreement. Surely, the employees may not be compelled to engage in meetings and discussions concerning a matter which is provided for in the collective bargaining agreement. It is true that Section 702 provides that the employer is not required to bargain over matters of inherent managerial policy; if, however, the employer enters into a collective bargaining agreement bringing into settlement matters which would otherwise be subject to change by the employer as within its inherent managerial discretion, he must be held as to those matters in the agreement.

### No. 3085 C.D. 1984—The Water Plant Employees

The arbitrator in this case decided that since the agreement was silent on the matter of workweek, consideration of the past practice concerning workweek was inappropriate; that the matter of change of the practice was therefore a "legitimate exercise of the management's right to direct the work force."

AFSCME concedes that this award also draws its essence from the collective bargaining agreement. AFSCME's appeal in this case is directed solely to the defense of this arbitrator's conclusion that the notice of change given only to the steward of the Local was insufficient to impose upon the employee's bargaining representatives which include District 89 the duty to request to meeting and discussion of the new workweek proposal. We agree.

AFSCME Local 2572 and AFSCME District Council 89 are separate, although affiliated, entities. Both

executed the collective bargaining agreement. The word Union is defined in the agreement as including both Local 2572 and District Council 89. The president and secretary of Local 2572 and a representative of District Council 89 signed the agreement. None of these officers seem to have been notified of the employer's proposal to change the workweek. We believe that the circumstances sufficiently support the arbitrator's decision that the notice of change given by the employer was not sufficient to relieve it of the obligation to meet and discuss.

In No. 3088 C.D. 1984, concerning the sewage plant employees, we reverse the order of the Court of Common Pleas of Schuylkill County; and we modify the arbitrator's award by vacating paragraph 3 thereof reading, "The employer is obligated to meet and discuss any changes of the present agreement including changes of a past practice relevant to this grievance"; and we reinstate the arbitrator's award as so modified.

In No. 3085 C.D. 1985, concerning the water treatment plant employees, we reverse the order of the Court of Common Pleas of Schuylkill County and reinstate the arbitrator's award.

### ORDER IN 3085 C.D. 1984

AND Now, this 31st day of January, 1986, the order of the Court of Common Pleas of Schuylkill County in the above-captioned matter is reversed and the arbitrator's award is reinstated.

### ORDER IN 3088 C.D. 1984

AND Now, this 31st day of January, 1986, the order of the Court of Common Pleas of Schuylkill County in the above-captioned matter is reversed; the arbitrator's award is modified by vacating paragraph 3 thereof reading, "The employer is obligated to meet and discuss any changes of the present agreement includ-

ing changes of a past practice relevant to this grievance''; the arbitrator's award is reinstated as so modified.